UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE THE APPLICATION OF )<br>)<br>DAVIDE VIEIRA DA SILVA )<br>        Plaintiff/Petitioner, )<br>)<br>v. )<br>)<br>ANA CAROLINA PEREIRA REIS )<br>        Defendant/Respondent. )<br>) | Case No. 1:21-cv-10850 |

## VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILD PURSUANT TO THE HAGUE CONVENTION

Plaintiff and Petitioner, Davide Vieira da Silva, respectfully shows this Court as follows:

### INTRODUCTION

1. This action is brought by Davide Vieira da Silva ("Petitioner," or "Father"), a citizen of Portugal, to secure the return of his son, G.S., who is—without Petitioner's consent or acquiescence—wrongfully detained in the Commonwealth of Massachusetts by the Child's Mother, the Defendant and Respondent, Ana Carolina Pereira Reis ("Respondent," or "Mother").

2. This Petition is filed pursuant to the Convention on the Civil Aspects of International Child Abduction (the "Hague Convention" or the "Convention"), Oct. 25, 1980, T.I.A.S. No. 11670 at 1, 22514 U.N.T.S. at 98, *reprinted in* 51 Fed. Reg. 10494 (1986), and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001-9011 (2014). A copy of the Hague Convention is attached hereto as **Exhibit A**. The Convention came into effect in the United States on July 1, 1988 and has been ratified between, among other Contracting States, the United States and Portugal.

3. The objectives of the Hague Convention are twofold:

  Article 1(a): "to secure the prompt return of children wrongfully removed to or retained in any Contracting State"; and

  Article 1(b): "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Ex. A; *see also* 22 U.S.C. § 9001.

4. The Hague Convention does not permit courts to consider the merits of any underlying custody dispute between the parties. Instead, federal district courts are tasked solely with determining whether a child has been wrongfully removed from or wrongfully retained apart from his or her country of habitual residence, by extension deciding which country's court system should make the ultimate custody determination. 22 U.S.C. §§ 9001(b)(4), 9003(a).

## PARTIES

5. Petitioner Davide Vieira da Silva is the Father of G.S. ("Child") and a citizen of Portugal. He is employed as a farmer and resides at Rua Nossa Senhora de Santana, n. 14, Sobral do Parelhão, 2540-467 Carvalhal – Bombarral, Portugal.

6. Respondent Ana Carolina Pereira Reis is the Mother of the Child and a citizen of Portugal. On information and belief, she is currently residing with the Child at 50 East Walnut Street Floor 2, Taunton, Massachusetts 02780.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this case pursuant to 22 U.S.C. § 9003(a) (jurisdiction under the Hague Convention) and 28 U.S.C. § 1331 (federal question jurisdiction). Venue is proper pursuant to 22 U.S.C. § 9003(b) and 28 U.S.C. § 1391(b) because, upon information and belief, the Respondent is believed to be residing with the Child in Taunton, Massachusetts.

8. Pursuant to Article 4, the Hague Convention applies to those children under the age of sixteen years who habitually resided in a Contracting State and are wrongfully retained in another Contracting State.

9. Here, the Child is under the age of sixteen, habitually resided in Portugal for his entire life up until Respondent took him to the United States and is now wrongfully retained in the United States.

## STATEMENT OF FACTS

10. Father and Mother are both citizens of Portugal. They met and began dating in 2017 and moved in together in 2018. Their son, G.S., was born in 2018. A translated copy of the Child's birth certificate is attached hereto as **Exhibit B**.

11. Although Father and Mother have never been married, they lived together continuously in Bombarral, Portugal up until Mother's removal of the Child to the United States in March 2020. Until his wrongful retention, the Child had always resided with both of his parents in Portugal and had never left the country until his removal in March 2020.

12. Father financially supported his family through his agricultural farming work. Prior to the wrongful removal of the Child, Father helped take care of his son every day, including regularly bathing and feeding him and attending medical appointments with the Child.

13. In Portugal, the Child was deeply enmeshed in family life. The Child's paternal grandmother took care of the Child while Mother worked as a supermarket cashier. Father's father, sister, cousin, and aunt also lived nearby and saw the Child every week. Mother's family also saw the Child regularly. Mother's sister and brother-in-law frequently saw the Child and the Child's maternal grandmother had recently moved back to mainland Portugal from the Azores archipelago and saw the Child regularly before his removal.

14. In early 2020, Mother expressed interest in traveling to the United States with the Child to visit her two brothers who live in the Boston area. Father agreed to the visit and gave his written authorization for Mother to travel with the Child to the United States for a two-week trip from March 1-15, 2020. Round-trip airfare was purchased for Mother and Child. A translated copy of the notarized travel authorization permitting the Respondent to temporarily remove the Child to the United States from March 1, 2020 until March 15, 2020 is attached hereto as **Exhibit C**.

15. On March 10, 2020, the Governor of Massachusetts declared a state of emergency due to the COVID-19 pandemic. As a result, TAP Air Portugal suspended Mother's return trip and Mother did not return to Portugal on March 15, 2020.

16. From March through at least May 29, 2020, Mother made efforts to reschedule her return flight and was in touch with TAP Air Portugal and the Consulate of Portugal in New Bedford. A translated copy of Mother's email and text message communications to this effect are attached as **Exhibit D**.

17. While Mother and Child have resided in the United States, Father has been in frequent communication with them, typically speaking with them via WhatsApp every day. Throughout this time, Mother continually refused to commit to a date certain by which she would return with the Child to Portugal. Rather, Mother told Father that she did not know when she would return and blamed the COVID-19 pandemic for disrupting her travel.

18. Frustrated by this lack of transparency and upset about being separated from his son and Mother's failure to return to Portugal or give a date certain by which she would return, Father decided to end his relationship with Mother on or about April 26, 2020 and moved out of the apartment they had been sharing prior to the Child's removal to the United States. Father, however, continued to hold out hope that Mother would return to Portugal with the Child once the travel policies of both countries permitted.

19. On July 14, 2020, Father contacted the Portuguese Central Authority and, on December 22, 2020, filed an application under the Hague Convention for the return of the Child. A copy of Father's Hague Convention application is attached as **Exhibit E**.

20. Father also retained a Portuguese attorney, Ana Luisa Costa, who on July 21, 2020 filed a criminal complaint on his behalf with a Portuguese court alleging a charge of kidnapping. This matter remains sealed. A translated copy of a certificate confirming filing is attached as **Exhibit F.**

21. On February 8, 2021, the United States Department of State, Office of Children's Issues, sent a letter to Mother informing her of Father's Request for Return of Child and advising her that should she fail to return the Child, judicial proceedings in a court in the United States would determine the Child's habitual residence and the jurisdiction where custody should be decided. A copy of this letter is attached hereto as **Exhibit G**.

22. On February 18, 2021, Mother responded to the State Department's letter, a copy of which is attached hereto as **Exhibit H**.

23. On January 28, 2021, Mother filed a petition for the regulation of parental responsibilities with a Portuguese court. A translated copy of Mother's petition is attached hereto as **Exhibit I**.

24. Current travel policies in the United States and Portugal would allow Mother and Child—as citizens of Portugal seeking essential travel in the form of family reunification—to return to Portugal so long as the Mother submits a negative PCR COVID-19 test from a sample taken within 72 hours of boarding. *See* COVID-19 Information, U.S. Embassy & Consulate in Portugal, https://pt.usembassy.gov/covid-19-information/; COVID-19 Measures Implemented in Portugal, visitPortugal, https://www.visitportugal.com/en/content/covid-19-measures-implemented-portugal. Mother, however, has refused to reschedule her return travel to Portugal and continues to wrongfully retain the Child in the United States.

25. In mid-April, 2021, Mother told Father that she does not plan to return to Portugal with the child and intends to stay in the United States indefinitely. On information and belief, Mother has recently obtained employment and the Child is being cared for by Mother's sister-in-law.

**WRONGFUL REMOVAL AND RETENTION OF CHILD BY RESPONDENT – CLAIM FOR RELIEF UNDER THE HAGUE CONVENTION**

26. As set forth above, Mother continues to wrongfully retain the Child in the Commonwealth of Massachusetts, United States, in violation of Article 3 of the Hague Convention, despite Petitioner's efforts to have the Child returned to Portugal.

27. Father never acquiesced or consented to the retention of the Child in the United States.

28. Mother's retention of the Child is wrongful within the meaning of Article 3 of the Hague Convention because:

   a. Retention of the Child is in violation of the Father's custody and visitation rights as the Child resided with both parents throughout his life and there was and is no court order or judgment limiting or denying Father's access to or visitation with the Child.

   b. Father exercised his custody and parenting rights, as detailed above, prior to the wrongful retention of the Child by Mother as Father resided with the Child, took part in the daily routines of his care (feeding, bathing, medical needs) and supported the Child financially. Portuguese law recognizes the joint parental responsibilities of non-married parents.

   c. The Child was and is a habitual resident of Portugal within the meaning of Article 3 of the Hague Convention immediately before his removal and wrongful retention by the Mother. The Child continuously resided in Portugal from his birth until Mother's wrongful retention.

29. The Hague Convention applies to those children under the age of 16 (sixteen) years who habitually reside in a Contracting State and are wrongfully retained in another Contracting State.

30. This Petition is filed less than one year from Mother's wrongful retention of the Child pursuant to Article 12 of the Hague Convention. *See Zuker v. Andrews*, 2 F. Supp. 2d 134, 139 (D. Mass. 1998) (noting that wrongful retention begins at moment custodial parent refuses to return child).

**PROVISIONAL REMEDIES**

31. Father requests that this Court issue an immediate order restraining Mother from removing the Child from the Commonwealth of Massachusetts and ordering the surrender of the Child's passport.

32. Father further requests that this Honorable Court schedule an expedited hearing on the merits of this Petition to prevent further harm as soon as possible and as required pursuant to the articles and principles of the Hague Convention.

**ATTORNEYS FEES AND COSTS**

33. To date, Father has incurred attorneys' fees and costs because of the wrongful retention of the Child by Mother.

34. Father respectfully requests that this Court award him all costs and fees, including transportation costs, incurred to date as required by ICARA. 22 U.S.C. § 9007(3).

**NOTICE OF HEARING**

35. Mother shall be given notice of these proceedings in accordance with the law governing notice in interstate child custody proceedings. 22 U.S.C. § 9003(c)

**RELIEF REQUESTED**

WHEREFORE, Petitioner, Davide Vieira da Silva, prays for the following relief:

a) An immediate temporary restraining order prohibiting the removal of the Child from the Commonwealth of Massachusetts pending a hearing and determination on the merits of this Verified Complaint;

b) An immediate order requiring that any and all of the Child's passports be surrendered to the Court;

c) An order scheduling an expedited preliminary injunction hearing on the merits of the Verified Complaint; and ordering that Respondent show cause at this hearing why the Child should not be returned to Portugal and why such relief requested in the Verified Complaint should not be granted;

d) Pursuant to Rule 65 of the Federal Rules of Civil Procedure, an order that the trial of the action on the merits be advanced and consolidated with the preliminary injunction hearing;

e) A final judgment in Petitioner's favor establishing that the Child shall be returned to Portugal;

f) An order awarding Petitioner his attorneys' fees and costs including fees for transportation;

g) For any such further relief as this Honorable Court may deem just and appropriate under the circumstances of this case.

Davide Viera Da Silva,
By his attorneys,

/s/ Andrea Peraner-Sweet
Andrea Peraner-Sweet (BBO# 550515)
aps@fitchlp.com
Laura K. Hennessey (BBO# 706827) (admission pending)
lkh@fitchlp.com
FITCH LAW PARTNERS LLP
84 State Street, 11th Floor
Boston, MA  02109
(617) 542-5542 tel.
(617) 542-1542 fax

Dated:  May 21, 2021

## **VERIFICATION**

I, Andrea Peraner-Sweet, am one of the attorneys for the Petitioner, Davide Vieira da Silva. I make this verification on behalf of Petitioner because the Petitioner is absent from this country. The above document is true based on my investigation to date and communication between myself, my colleagues Jeffrey Soilson and Laura Hennessey at Fitch Law Partners LLP, and Davide Vieira da Silva except as to the matters that are stated on information and belief; as to those matters, I believe the statements to be true. I declare under penalty of perjury under the laws of the Commonwealth of Massachusetts that the foregoing is true and correct.

This 21st day of May, 2021.

/s/Andrea Peraner-Sweet
Andrea Peraner-Sweet